Matter of Oberlander (2019 NY Slip Op 06496)





Matter of Oberlander


2019 NY Slip Op 06496


Decided on September 11, 2019


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 11, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
RUTH C. BALKIN, JJ.


2019-00958

[*1]In the Matter of Frederick M. Oberlander, admitted as Frederick Martin Oberlander, an attorney and counselor-at-law. (Attorney Registration No. 3878212)



The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 23, 1999, under the name Frederick Martin Oberlander. By order to show cause dated February 6, 2019, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by an order of the United States District Court for the Eastern District of New York dated August 13, 2018, by filing an affidavit in accordance with 22 NYCRR 1240.13(b) with the Clerk of this Court.



Catherine A. Sheridan, Hauppauge, NY (Robert H. Cabble of counsel), for Grievance Committee for the Tenth Judicial District.



PER CURIAM.


OPINION & ORDER
By order dated August 13, 2018, the United States District Court for the Eastern District of New York suspended the respondent from the practice of law for a period of one year, commencing September 1, 2018.
The underlying proceeding involved allegations that the respondent engaged in a relentless campaign to extort a settlement by publicly releasing documents that had been sealed by a federal court, and that in furtherance of that effort, the respondent intentionally defied the orders of three different judges in the Southern and Eastern Districts of New York as well as the United State Court of Appeals for the Second Circuit (hereinafter Second Circuit), filed a slew of frivolous motions and lawsuits, and repeatedly accused the courts of illegal and fraudulent conduct.
Underlying Facts 
The underlying facts, briefly summarized, are as follows:
In 1998, Felix Sater was prosecuted for his involvement in a securities fraud and money laundering scheme. On December 10, 1998, Sater pleaded guilty before the Honorable I. Leo Glasser, in the United States District Court for the Eastern District of New York, to an information charging him with violating the Racketeer Influenced and Corrupt Organizations Act (18 USC § 1962[c]; hereinafter RICO). As part of his plea, Sater entered into a cooperation agreement with the United States Attorney's Office for the Eastern District of New York. Because of the sensitive nature of the information Sater was providing and the potential danger to Sater's life if his identity were to be revealed, Judge Glasser sealed the action and its docket sheet. A press release in March 2000 announced Sater's conviction, but not the cooperation agreement. On October 23, 2009, Sater was sentenced and ordered to pay a fine in the sum of $25,000. Sater's criminal case remained [*2]sealed.
In 2002, Sater joined Bayrock Group, LLC (hereinafter Bayrock), a real estate development firm. Jody Kriss was Bayrock's Director of Finance from 2003 to 2008, and Joshua Bernstein was employed there from November 2006 to September 2008. Kriss hired the respondent as his attorney in 2007, and introduced the respondent to Bernstein.
During his employment at Bayrock, Bernstein maintained a hard drive that contained copies of all of Bayrock's files from its servers. The files included emails and documents Sater had sent to his attorney in connection with the criminal proceedings, including his cooperation agreement, a United States Department of Justice financial statement dated December 10, 1998, two proffer agreements, and a presentence investigation report (hereinafter PSR) dated June 28, 2004 (hereinafter collectively the sealed materials).
In September 2008, Bernstein's employment at Bayrock was terminated and he took the hard drive with him. He kept the hard drive and the sealed materials, despite being instructed to return them. Bernstein thereafter turned over the sealed materials to the respondent. In May 2010, the respondent filed a civil RICO complaint against Sater and 29 other defendants in the Southern District of New York on behalf of Kriss and another Bayrock member, alleging a RICO conspiracy involving tax evasion, money laundering, embezzlement, and fraud. The respondent attached portions of the sealed materials as exhibits to the complaint. The complaint also referred to information in the sealed materials, including details about Sater's cooperation with the government against certain members of organized crime.
The case was originally assigned to United States District Judge Naomi R. Buchwald in the Southern District of New York. On May 13, 2010, Sater's counsel informed Judge Buchwald that the respondent had filed the complaint publicly, and that it had been uploaded by the online news service Courthouse News to its website. That same day, Judge Buchwald directed that the complaint be sealed and enjoined further dissemination of the complaint and exhibits, pending further order of the court.
On May 18, 2010, Sater moved for a preliminary injunction before Judge Glasser, requesting that the respondent and his clients be ordered to return the sealed materials to Sater. Judge Glasser issued a temporary restraining order (hereinafter TRO) prohibiting the respondent and his clients from disseminating the sealed materials pending a hearing on the motion. Thereafter, Judge Glasser issued a permanent injunction prohibiting the dissemination of the PSR and its contents, and directed the respondent to return the PSR to the U.S. Attorney's Office. Judge Glasser extended the TRO with respect to the remaining sealed materials, and requested briefing on several issues. The respondent appealed Judge Glasser's order and the May 18, 2010, TRO to the Second Circuit.
On July 16, 2010, as part of his response to the TRO, the respondent filed a signed declaration in which he made a number of accusations against Judge Glasser and the United States District Court for the Eastern District of New York. Such accusations included, among others, that Judge Glasser presided over a "star chamber" and "maintained a constitutionally illegal super-sealed docket system of private justice."
On July 20, 2010, Judge Glasser found that the respondent knew that the documents were sealed before he filed them publicly, that Bernstein had obtained the documents wrongfully, and that the respondent "had documents which he knew or perhaps should have known may have been improperly obtained by Bernstein and passed on to him." Judge Glasser directed the respondent to return the PSR, including all copies, and prohibited its dissemination. Despite Judge Glasser's explicit injunction in his previous ruling, the respondent continued to maintain copies of the PSR. Judge Glasser issued a further TRO prohibiting the dissemination of any copies. Judge Glasser ordered additional briefing on the sealed materials, and extended the TRO pending his decision. The respondent appealed Judge Glasser's July 20, 2010, oral order.
The May 20, 2010, TRO was extended, and on August 12, 2010, the parties stipulated to a standstill agreement.
In letters dated October 18, 2010, and November 9, 2010, the respondent continued to demand money from Sater and the other Southern District defendants, and threatened to disseminate the sealed information if they did not agree to a monetary settlement.
On February 14, 2011, upon learning that the respondent still had electronic copies of the PSR, the Second Circuit issued a summary order temporarily enjoining the respondent and anyone else acting in concert with him from distributing publicly or revealing in any way documents [*3]or the contents thereof subject to sealing orders before the Eastern and Southern Districts. The Second Circuit also directed Chief Judge Raymond Dearie to assign a district judge "with the limited mandate of implementing and overseeing compliance with our orders and the orders previously entered by Judge Glasser." Judge Dearie assigned Eastern District Judge Brian M. Cogan.
In a March 23, 2011, order, Judge Glasser found that the respondent "had knowingly and intentionally flouted a Court order" by "unilaterally deciding" to disclose information in Sater's sealed criminal proceeding. The respondent appealed the March 23, 2011, order.
Notwithstanding the Second Circuit's February 14, 2011, summary order, the respondent requested clarification from Judge Cogan about the extent to which he was permitted to disseminate information from the sealed materials. At a hearing before Judge Cogan, the respondent revealed that he had still not destroyed or returned electronic and paper copies of the original PSR and other sealed materials, in violation of Judge Glasser's July 20, 2010, order. By oral order and subsequent written order on April 4, 2011, Judge Cogan directed the respondent to destroy or return any remaining electronic or paper copies of the PSR and other sealed materials. The respondent appealed Judge Cogan's orders. On May 13, 2011, Judge Cogan issued an additional written order denying the respondent's request to release certain information from the sealed materials. The respondent appealed that order.
On June 29, 2011, the Second Circuit, among other things, affirmed Judge Glasser's permanent injunction against dissemination of the PSR, and remanded that portion of the appeal that involved the other sealed documents to Judge Glasser for a final determination.
On February 5, 2012, the New York Times published an article entitled By Revealing Man's Past, Lawyer Tests Court Secrecy , in which the respondent revealed his identity and referred to Sater as John Doe.
On February 10, 2012, Sater's counsel moved by order to show cause to hold the respondent and his attorney, Richard Lerner, in civil contempt on the ground that the respondent violated the Second Circuit's February 14, 2011, order by revealing Sater's identity in the article. Judge Cogan directed that a hearing be held on February 27, 2012. The respondent and Lerner moved to quash, and in their motion papers, charged, inter alia, that "Judge Glasser and the Second Circuit have . . . hid[den] an entire covert justice system operation devoid of constitutional legitimacy." Judge Cogan referred the matter to the U.S. Attorney's Office to determine whether to prosecute Lerner and the respondent for criminal contempt. The U.S. Attorney's Office for the Eastern District recused itself, and referred the matter to the U.S. Attorney's Office for the Northern District of New York. That investigation was ongoing as of the date of the order of the Committee on Grievances for the United States District Court for the Eastern District (hereinafter the District Court Committee).
Disciplinary Complaint 
On June 9, 2014, Sater's counsel filed a disciplinary complaint against the respondent. The District Court Committee ordered the respondent to show cause why he should not be disciplined for violating the following Rules of Professional Conduct (22 NYCRR 1200.0): rule 3.1 ("by filing multiple frivolous appeals and bringing frivolous lawsuits, and asserting frivolous arguments at hearings"); rule 3.2 ("by engaging in improper dilatory tactics"); rule 3.3 ("by engaging in undignified and discourteous conduct toward the court"); rule 3.4 ("by knowingly engaging in illegal conduct by contravening court orders, disclosing sealed materials, and attempting to obtain a settlement by threatening further illegal conduct"); rule 8.4(a) ("by violating multiple Rules of Professional Conduct"); rule 8.4(h) ("by engaging in conduct that adversely reflects on his fitness as a lawyer"); and rule 8.4(d) ("by engaging in conduct that is prejudicial to the administration of justice"). The respondent filed a response, raising various arguments and procedural defenses.
District Court Ruling 
The District Court Committee rejected all of the respondent's procedural defenses, and found that the evidence was insufficient to conclude that the respondent violated rule 3.1 (frivolous conduct) and rule 3.2 (dilatory tactics) of the Rules of Professional Conduct (22 NYCRR 1200.0). However, the District Court Committee found by clear and convincing evidence that the respondent violated Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.3(f)(2) (discourteous conduct), ruling as follows:
"The conduct that forms the basis for this charge is the respondent's series of aggressive attacks on Judge Glasser and Judge Cogan, the Second Circuit, and the Eastern District. Rule 3.3 does not bar attorneys from disagreeing, even vigorously, [*4]with a judge's ruling or from engaging in zealous advocacy on behalf of a client. It requires, however, that attorneys do so within the bounds of legitimate advocacy. The respondent's conduct in this case far exceeded those bounds.
. . .
"The respondent violated Rule 3.3 [of the Rules of Professional Conduct (22 NYCRR 1200.0)] by making unfounded accusations against Judge Glasser, Judge Cogan, the Eastern District, and the Second Circuit. In his July 16, 2010 declaration before Judge Glasser, the respondent characterized the Eastern District as a star chamber,' an oppressive medieval English court. The respondent's efforts to excuse this epithet as a matter of historicity' [sic] is unpersuasive, especially in the context of this matter, for this was no isolated reference. The respondent's filings are replete with accusations of illegality, secrecy and even criminality, which utterly belie his efforts to reframe his conduct as a harmless historical reference.
"Indeed, the respondent's litany of accusations against and characterizations of Judges Glasser and Cogan, the entire Eastern District, and the Second Circuit makes the point. The respondent accused Judge Glasser and the Eastern District of concoct[ing] a system of private justice without public accountability,' declaring that [t]his is not just constitutional amnesia," [t]his is a constitutional crisis.' The respondent charged that Judge Glasser acted out of pusillanimous fear,' and in a blatant and outrageous comparison to Senator McCarthy, quoted Joseph Welch's famous rebuke, Finally, I would ask of this court one question: You have done enough. Have you no sense of decency, sir, at long last? Have you left no sense of decency? For the only threat to our Union is that a judicial system would self-justify and [r]ationalize how it could ever dare operate in secret.' (emphasis in original). "The respondent claimed that Judge Glasser and the Second Circuit hid[ ] an entire covert justice system operating devoid of constitutional legitimacy, . . . including the disgrace of purporting' to block a U.S. citizen from report[ing] judicial unlawfulness to Congress. He accused the Second Circuit of issuing orders evidencing lawlessness' and sedition,' constituting a scheme to defraud[ ]. . .victims of untold millions of dollars,' and engaging in a conspiracy to and actual accomplishment of the falsification of judicial records.' The respondent charged the Second Circuit with giving its backhand to the Constitution and concomitant requirements of "normal" sealing in organized crimes cases,' and the Eastern District with taking it farther into the realms of lawlessness than anything we dared to imagine. And we mean lawlessness.' He also alleged that the Eastern District took unlawful and unethical measures to cover up . . . illegal sentencing schemes.'
"The list goes on. The respondent accused Judge Cogan of maintaining an inaccurate docket,' and labeled his issuance of the order to show cause as illegal and unlawful.' He claimed that Judge Glasser's long dead and illegally empty docket is simply unsustainable as anything other than participation in the conspiracy of secret courts.' The respondent asserted that Judge Glasser failed to disqualify [himself] despite Congressional mandate . . . because of . . . [his] appearance of bias and lack of impartiality,' and that an objective, informed observer . . . cannot rationally conclude but that [Judge Glasser] appears to be in criminal conspiracy with at least [ ] Sater's lawyers' to deprive the respondent of his and his client's rights. The respondent charged Judge Glasser with ignoring his arguments: [I]f Judge Glasser ever does hold a hearing to decide whether to unseal any of the documents, he will ignore all your arguments, appeals, and evidence. You're doing exactly that, aren't you. Aren't you.' (emphasis in original). He accused Judge Glasser of active, collusive criminal participation . . . [which] is enterprise corruption,' and claimed that the Eastern District does not recognize the public's rights.'
"The respondent's false and malicious attacks on this Court, the Second Circuit, Judge Cogan, and Judge Glasser are an offense against the dignity and integrity of the courts and our judicial system"' (citations omitted).
With respect to rule 3.4(a)(6) (illegal conduct) of the Rules of Professional Conduct (22 NYCRR 1200.00), and whether the respondent contravened court orders and disclosed sealed materials, which was currently the subject of ongoing criminal contempt proceedings, the District Court Committee deferred a ruling on this portion of the charge pending the outcome of the criminal proceedings, although it noted that "the record is clear that the respondent intentionally flouted multiple court orders."
Regarding whether the respondent violated rule 3.4(a)(6) of the Rules of Professional Conduct (22 NYCRR 1200.0) when he threatened to disseminate the sealed materials unless Sater and the other Southern District defendants agreed to a monetary settlement, the District Court Committee found that the respondent did violate the rule based on his own communications. Regarding the remaining rule violations, the District Court Committee found that the evidence established that the respondent violated Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4(a), (d), and (h) as well.
On the issue of sanction, the District Court Committee concluded as follows:
"In making this determination, the Committee has carefully reviewed the voluminous record of these proceedings, the respondent's submissions, and those of Richard Lerner. In the heat of litigation and in the course of vigorous representation, lawyers may say or do things that they later regret. The respondent clearly regrets none of his conduct. Quite the contrary, he doubles down on his accusations, presumably because he is so certain of the correctness of his position. But confidence in one's cause does not give a lawyer license to say and do whatever he pleases; it does not permit him to threaten adversaries or to insult and demean judges who disagree with him. Chief Judge Irving Kaufman observed, Advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced,' and zealous advocacy . . . can never excuse contumacious or disrespectful conduct.' Van Inderstine [Cox v RGJ Contracting Co., Inc.] , 480 F.2d [454,] at 459.
"The respondent's conduct toward Judge Glasser, Judge Cogan, the Eastern District, and the Second Circuit, as well as his threats in an effort to extort a settlement, warrants a significant sanction. Accordingly, the respondent is hereby suspended from the practice of law in this Court for one year commencing September 1, 2018. The Committee will consider whether additional sanctions are necessary when the criminal proceedings are concluded."
Order to Show Cause 
By order to show cause dated February 6, 2019, this Court directed the respondent to show cause why discipline should not be imposed upon him in this State pursuant to 22 NYCRR 1240.13, based on the misconduct underlying the discipline imposed by the order of the Eastern District dated August 13, 2018, by filing an affidavit in accordance with 22 NYCRR 1240.13(b) with the Clerk of this Court. 
Although served on February 14, 2019, with a copy of the order to show cause, the respondent has neither responded nor has he requested additional time in which to do so.
Findings and Conclusion 
Based on the foregoing, we find that the imposition of reciprocal discipline is warranted based on the findings of the District Court Committee. The respondent showed no regret for his behavior. His aggressive behavior did not consist of an isolated outburst, but rather, a prolonged course of conduct. The respondent's relentless insults and attacks in multiple filings directed at Judge Glasser, Judge Cogan, the Eastern District, and the Second Circuit, coupled with his campaign to extort a settlement using improperly obtained materials, constitute undoubtedly serious professional misconduct. We conclude that a suspension from the practice of law for a period of one year is warranted.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and BALKIN, JJ., concur.
ORDERED that, pursuant to 22 NYCRR 1240.13, the respondent, Frederick M. Oberlander, admitted as Frederick Martin Oberlander, is suspended from the practice of law for one year, commencing October 11, 2019, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than July 13, 2019. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension he (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(c)(3); and (4) otherwise properly conducted himself; and it is further,
ORDERED that during the period of suspension and until further order of the Court, the respondent, Frederick M. Oberlander, admitted as Frederick Martin Oberlander, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Frederick M. Oberlander, admitted as Frederick Martin Oberlander, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Frederick M. Oberlander, admitted as Frederick Martin Oberlander, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court